IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

MICHAEL WILLIAMS,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　Petitioner,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:　　**7: 08-CV-90028 (HL)**
　　VS.　　　　　　　　　　　　　　　　:　　　28 U.S.C. § 2255
　　　　　　　　　　　　　　　　　　　:　　**7: 04-CR-5-001 (HL)**
UNITED STATES OF AMERICA,　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　Respondent.　　　　　　　　　　:

**RECOMMENDATION**

Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255, filed on October 2, 2008, is before this Court for the issuance of a recommendation of disposition pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

**Background**

Petitioner was indicted with three co-defendants in the Middle District of Georgia on March 18, 2004 (Doc. 1). The indictment charged Petitioner with two counts of possession of cocaine with intent to distribute, one count of possession of a firearm in furtherance of a drug trafficking crime, one count of possession of a firearm by a convicted felon, nine counts of money laundering, and one count of structuring. Petitioner was represented by a court-appointed attorney, James Jarvis. On October 28, 2004, a jury found Petitioner guilty as to Counts 1, 2, and 4-14, and not guilty as to Count 3, which was possession of a firearm during the furtherance of a drug crime (Doc. 67). Petitioner was sentenced to 425 months imprisonment, with eight (8) years supervised release on February 23, 2005 (Doc. 93). Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Eleventh Circuit, which affirmed the

conviction, yet vacated Petitioner's sentence and remanded the case for re-sentencing based on an erroneously enhanced sentencing guideline range (Doc. 138). Petitioner was re-sentenced to 405 months imprisonment, with eight (8) years supervised release on April 20, 2006 (Doc. 147). On October 2, 2008, Petitioner filed this Motion to Vacate pursuant to 28 U.S.C. § 2255 (Doc. 190).

## Petitioner's § 2255 Claims

Petitioner asserts several grounds of ineffective assistance of counsel in his Amended Motion to Vacate[1] (Doc. 209). Petitioner alleges the following errors: (1) counsel failed to request a mistrial after it became evident that the jurors had begun discussing the case prior to the completion of the evidence (Doc. 190); (2) Petitioner's Sixth Amendment right to representation was constructively denied due to the District Court's failure to assign Petitioner new counsel; and (3) counsel was ineffective when he failed to prepare and provide a defense for Petitioner (Doc. 209).

The Court appointed counsel to represent Petitioner on the § 2255 motion and held an evidentiary hearing on the motion on November 10, 2010. At the evidentiary hearing, Petitioner was represented by Cynthia Roseberry and the Government was represented by Michael Dennard. Following the preparation of a transcript of the evidentiary hearing proceedings, both parties have filed briefs in support of their positions.

## Legal Standards

Section 2255 provides that:

> a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the

---

[1] During the evidentiary hearing, Petitioner stated that he is proceeding in this action under the claims alleged in his Amended Motion to Vacate (Doc. 221, Evidentiary Hearing Tr. p. 3).

> sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. If a prisoner's § 2255 claim is found to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that (1) his attorney's performance was deficient and that (2) he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Chandler v. United States*, 218 F.3d 1305, 1312 (11th Cir. 2000).

To establish deficient performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Chandler*, 218 F.3d at 1313. There is a strong presumption in place that the challenged action constituted sound trial strategy. *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996). As such, a court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Hall v. Thomas*, 611 F.3d 1259, 1290 (11th Cir. 2010).

To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have produced a different result. *Weeks v. Moore*, 216 F.3d 951, 960 (11th Cir. 2000); *Mills v. Singletary*, 63 F.3d

999, 1020 (11th Cir. 1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Halley*, 209 F.3d 1243 (11th Cir. 2000). The *Strickland* court stated that "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

**Discussion**

*1. Premature jury deliberations*

Petitioner first asserts that trial counsel was ineffective when he failed to move for a mistrial after the jury allegedly began deliberating before the close of the evidence (Doc. 190)[2]. A jury trial was held from October 25 to October 28, 2004 before the Honorable Hugh Lawson, United States District Judge, in Valdosta, Georgia. The jury submitted four (4) questions to the judge during the trial. The two questions involving Petitioner asked, "Sentence the defendants would be facing in years, how many if proven guilty" and "Charges[?] exactly" (Doc. 120 at p. 4. ll. 22-24). The judge answered the first question by telling the jury that sentencing was within the sole discretion of the court, and that the jurors should not be concerned with sentencing (*Id.* at p. 5). The judge provided the jurors with copies of the indictment to satisfy the second question. Prior to responding to the jurors' questions, the judge asked the attorneys if there were any

---

[2] While this issue is not alleged in Petitioner's amended motion, both parties address the claim in the post-hearing briefs (Docs. 223, 225).

4

objections to his proposed responses and all the attorneys answered no, including Petitioner's trial counsel (*Id.*).

Herein, Petitioner's main contention is that the question regarding sentencing demonstrated that the jurors had come to premature conclusions about his guilt before all the evidence was heard (Doc. 209). The practice of allowing jurors to ask written questions during a trial does not result in premature deliberations. *See U.S. v. Richardson*, 233 F.3d 1285, 1289 (11th Cir. 2000) (finding written juror questions to witnesses during trial did not cause premature deliberations). Further, Petitioner has not presented any evidence that shows the jurors discussed the facts of the case or began deliberations as to Petitioner's guilt or innocence prior to the conclusion of the evidence. The only evidence presented is that there was a written question from a juror that asked what the defendants' sentences would be <u>if</u> they were found guilty (Doc. 120 at p. 4-5).

A trial judge is given broad discretion to respond to an allegation of juror misconduct, especially when it involves internal misconduct, such as premature deliberations. *U.S. v. Dominquez*, 226 F.3d 1235, 1246 (11th Cir. 2000). If the trial judge believes there is misconduct, it is within his discretion to determine how to address the issue. "Furthermore, the court has no duty to investigate purely speculative allegations of 'juror misconduct'". *Brown v. U.S.*, 2006 WL 1582421, *10 (M.D. Ga. June 5, 2006) (Lawson, J.). In *Brown,* the petitioner alleged that his counsel was ineffective because he failed to object to a juror's question. *Id.* at *13. The court determined that "[t]rial counsel can not be found to be deficient, or below an objective standard of reasonableness[,] for failing to object to a question that did not indicate juror misconduct, and in which the investigation of, fell purely within the discretion of the district court." *Id.* at *14. Herein, Petitioner's trial counsel cannot be found ineffective because Judge Lawson, having the

5

discretion to determine if there was juror misconduct, decided that the questions could be appropriately answered for the jurors.

Petitioner has failed to show that his trial counsel's decision to proceed with the trial was unreasonable and that no competent counsel would have taken the same action. For example, neither counsel for the co-defendant nor for the Government objected to the judge's decision (Doc. 120 at p. 4-5). Additionally, Petitioner has failed to establish that, but for the actions or inactions of his trial counsel, the result at trial would have been different. Accordingly, Petitioner's claim of ineffective assistance of counsel based on his trial counsel's failure to move for a mistrial after alleged jury misconduct fails.

## 2. Right to Retain Counsel

Petitioner alleges that the district court denied him his Sixth Amendment right to counsel of his choice (Doc. 209). On appeal, Petitioner argued that the district court abused its discretion when it denied Petitioner his right to hire a retained lawyer. *United States v. Williams*, 162 F. App'x 884 (11th Cir. 2006) (brief of appellant). The Eleventh Circuit ruled that Petitioner was not prejudiced by the continued representation by Petitioner's trial counsel. *Id.* at 887.

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *U.S. v. Nyhuis*, 211 F.3d 1340, 1343. "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255." *Id.* (quoting *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)). As Petitioner's claim has been raised on direct appeal and decided against Petitioner, the issue of Petitioner's right to retain counsel of his choice cannot be relitigated and is moot.

### *3. Failure to investigate and provide a defense*

Petitioner asserts that his trial counsel failed to investigate possible witnesses and potential defenses, resulting in ineffective assistance of counsel. In his post-hearing brief, Petitioner's main argument is that his trial counsel did not investigate Petitioner's lottery winnings as a defense to the money laundering charges (Doc. 223). Petitioner further contends in this most recent brief that his trial counsel failed to prevent the introduction of testimony regarding tainted evidence.[3] In his amended motion, Petitioner asserts that his trial counsel also failed to investigate: (1) the tainted evidence; (2) the facts surrounding the certificates of deposit; (3) potential witnesses; (4) the Government witnesses (Doc. 209).

A lawyer is required to make an effort to investigate the obvious. *House v. Balkcom*, 725 F.2d 608, 618 (11th Cir. 1984). "When a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." *Id.* at 617-18. "Counsel has a duty to interview potential witnesses and make an independent examination of the facts, circumstances, pleadings and laws involved." *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir. 1979) (internal quotations omitted).

There is a wide degree of latitude provided to the trial counsel if he decides not to investigate claims or issues based on trial strategy. *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010). Strategy is the "trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client." *Id.* (quoting *Chandler v. U.S.*, 218 F.3d 1305, 1314 n. 14 (11th Cir. 2000)). An attorney's strategy can

---

[3]In his amended motion, Petitioner's contention is that his trial counsel failed to investigate the facts surrounding the tainted drug evidence, but does not contend that his trial counsel failed to prevent the introduction of testimony (Doc. 209).

7

include determining what witnesses to call, how to cross-examine, and what lines of defenses he will present at trial. *Id.*

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. When determining the reasonableness of counsel's actions and decisions, it is important to assess the information supplied by the defendant because the reasonableness can depend on the defendant's own actions. *Id.* If Petitioner can prove that his trial counsel's representation fell below the reasonableness standard, he must still show he was prejudiced by counsel's actions. *Goodwin v. Balkcom*, 684 F.2d 794, 805 (11th Cir. 1982).

*A. Lottery Winnings*

Petitioner's main complaint is that his trial counsel failed to investigate his lottery winnings and present this information to the jury to contradict the Government's money laundering evidence (Doc. 223). Petitioner asserts that it is "undisputed that [Petitioner] informed trial counsel of the addresses of lottery venders" (Doc. 223). Yet, during the trial, Petitioner told the presiding judge that he had not informed his trial counsel of the witnesses he wished to call (Doc. 118 at p. 6-7). At the evidentiary hearing, trial counsel stated that "if [he] had a complete name and some kind of address and phone number or lead from somebody, [he] would have pursued everything [he] could have and presented it at trial if [he] had a good faith basis for doing so." (Doc. 221 at p. 32, ll. 19-22). Petitioner testified that he told his trial counsel about "the one young man in Adel" who had knowledge of Petitioner's gambling and "one

8

[witness] in a part of Florida" where he had gambled (*Id.* at p. 47). However, Petitioner only had addresses of where he played the lottery at the time of trial, and did not have names of any potential witnesses (*Id.* at pg. 47, ll. 7-10).

Transcripts from the trial show that Petitioner's trial counsel cross-examined at least five Government witnesses, asking about Petitioner's gambling habits and if the witnesses were aware of the amount of money Petitioner had won (*See generally* Doc. 119). With the minimal information provided by Petitioner, his trial counsel was unable to investigate potential witnesses regarding the lottery winnings. As a result, Petitioner's counsel (Jarvis) cross-examined witnesses as a means of presenting evidence about Petitioner's gambling income. The following excerpts are cross-examinations by Petitioner's counsel:

> [Testimony from Steven Williams, Petitioner's brother]:
>
> JARVIS: Do you know whether [Petitioner] had any success at [the lottery]?
> WILLIAMS: Yeah.
> . . .
> WILLIAMS: [Petitioner would] tell me he won Fantasy Five, Cash Three. He's a pretty lucky person.
> JARVIS: Did he discuss amounts with you?
> . . .
> WILLIAMS: Thousands [of] dollars, you know, heaps, a good amount of money (*Id.* at p. 39, ll. 1-9).
>
> [Testimony from Lindsey Mobley, person who purchased cocaine from Petitioner for the purpose of resale]:
>
> JARVIS: Do you know whether or not [Petitioner] did [play the lottery]?
> MOBLEY: Yes.
> . . .
> JARVIS: Do you know whether he had any success at [the lottery] or not?
> MOBLEY: Probably did. I would say he had – I've heard, you know, that he had (*Id.* at p. 78, ll. 4-16).

9

[Testimony from Sharon Twine, Petitioner's previous girlfriend]:

JARVIS: Did you ever know [Petitioner] to gamble?
TWINE: Yes, sir.
JARVIS: All right, and how would he do that?
TWINE: He played the lottery a lot.
. . .
JARVIS: And what kind of success would he have?
TWINE: I don't know much about the Cash Three, but I know he would play the Cash Three, and he won often.
JARVIS: Hundreds or thousands of dollars, or how would you characterize it?
TWINE: I would say a couple hundred dollars.
JARVIS: At a time?
TWINE: Yes, sir.
JARVIS: And that happened more than once?
TWINE: Yes   (*Id.* at p. 94, ll. 1-4, 9-18)

[Testimony from Cassandra Moore, Petitioner's former girlfriend]:

JARVIS: Did [Petitioner] play the lottery?
MOORE: Yes
. . .
MOORE: He won the lottery
. . .
MOORE: I remember him winning $7,000 one time.

(*Id.* at p. 150, ll. 25 - p. 151, ll. 1-9).

Petitioner's trial counsel was able to provide testimony from several different witnesses showing that Petitioner had been a successful gambler. Further, Petitioner has not shown that the introduction of more testimony regarding his gambling would have resulted in a different outcome. As Petitioner cannot show he was prejudiced by his trial counsel's lack of further investigation into his gambling income, Petitioner's claim of ineffective assistance of counsel fails.

*B. Tainted Evidence*

Petitioner contends that his trial counsel was ineffective because the Government sought to

introduce Exhibit 41, which was tainted evidence, without objection from Petitioner's counsel (Doc. 209). Petitioner asserts that his trial counsel was ineffective regarding the tainted evidence because Petitioner's trial counsel: (1) failed to investigate the evidence; (2) failed to interview several witnesses regarding Exhibit 41; and (3) failed to secure reports regarding the theft of the drugs.

In Petitioner's post-hearing brief and at the evidentiary hearing, Petitioner attempted to restate the claim as a failure to prevent testimony regarding the tainted evidence (*See* Docs. 221 at p. 12-14; 223). At the evidentiary hearing, the undersigned sustained an objection to the line of questioning regarding the failure to prevent testimony about the tainted evidence because Petitioner had not alleged this claim in any of his Petitions (Doc. 221 at p. 15). As Petitioner did not raise this claim in his Petition, it is time-barred under 28 U.S.C. § 2255(f) and cannot be considered herein.

The main thrust of Petitioner's argument regarding the tainted evidence marked Exhibit 41 was that the exhibit was allowed into evidence without objection from his trial counsel. Petitioner also contends that his trial counsel was ineffective because he failed to interview several individuals whom Petitioner believed had knowledge of the tainted evidence. As the record shows, Exhibit 41 was not offered into evidence (Docs. 120 at p. 46; 221 at p. 27). However, Petitioner's trial counsel still "cross-examined witnesses about [the evidence]" (Doc. 221 at p. 12, ll. 16).

> JARVIS: So are you telling these ladies and gentlemen of the jury that we're speculating about whether [Exhibit 41] has got something to do with this case or not?
>
> WITNESS: Yes, sir; we are, because of the circumstances that we had.

11

. . .

JARVIS: So 41, we're speculating that this goes with 43 and 39?

WITNESS: Yes, sir, we are.

JARVIS: But we don't really know?

WITNESS: We don't know for a fact.

. . .

JARVIS: But you do know that all of [the tainted evidence] has been tested for fingerprints?

WITNESS: Yes, sir - - to my knowledge, I believe it was, yes, sir.

JARVIS: And no prints have come back that will help us ascertain the truth?

WITNESS: Not that I'm aware of.

(Doc. 118 at p. 110, ll. 21-24, p. 111, ll. 10 - 13, 16 - 21).

Furthermore, Petitioner's trial counsel did not need to expand his investigation into the tainted drug exhibit because, prior to trial, Petitioner's counsel was aware that Exhibit 41 would not be offered into evidence (Doc. 221 at p. 34). At the evidentiary hearing, Petitioner's trial counsel testified that "after I - - we established that the chain of custody was so faulty, I think I had some conversations with the government, . . . that [the government] wasn't going to be able to get [the tainted exhibit] in [to evidence] (*Id.* at p. 16, ll. 13-18).

Exhibit 41 was not entered into evidence, and Petitioner's counsel's cross-examination of the Government's witness showed the jury that the exhibit was tainted and not reliable. Petitioner has failed to show that the result of the trial would have been different but for his counsel's actions; thus, Petitioner's claim of ineffective assistance of counsel in regard to Exhibit 41 fails.

*C. Certificates of deposit*

Along with the failure to investigate the lottery winnings, Petitioner asserts that his trial counsel failed to investigate the certificates of deposit ("CDs") that aided in his conviction. Petitioner's contention is that if his trial counsel had performed a substantial investigation into the sources of funds Petitioner used to purchase the CDs there could have been evidence presented to the jury that would have mitigated the money laundering charges (Doc. 209). Petitioner, therefore, alleges that he was found guilty on all the counts of money laundering because his trial counsel did not investigate the signatures on the CDs, did not submit additional CDs into evidence, and did not interview employees of Park Avenue Bank (Doc. 209).

Petitioner first contends that if his trial counsel would have investigated the CDs he would have found that Sharon Twine did not sign the CDs admitted into evidence. However, Twine testified at trial that she did sign the exhibits and Petitioner has offered no evidence to refute Twine's testimony (Doc. 119 at p. 84-87). Petitioner also alleges that the Government urged someone to sign the CDs admitted into evidence, and that Petitioner's trial counsel failed to submit additional CDs into evidence. Petitioner does not provide any explanation or evidence as to how his trial counsel's actions prejudiced Petitioner. As he provides no evidence that he was prejudiced, Petitioner has failed to establish his counsel was ineffective.

Petitioner also contends that he used the money he won from gambling to purchase CDs. Petitioner asserts that he won between $5000.00 and $20,000.00 on five or six occasions (Doc. 209). Petitioner has not provided evidence of his winnings. As stated above, Petitioner's trial counsel effectively elicited information regarding Petitioner's gambling through the cross-examination of several witnesses, showing the jury that Petitioner could have purchased the CDs

13

with his gambling winnings. Further, Petitioner's trial counsel testified that he investigated Petitioner's viable sources of income.

> ROSEBERRY: Do you recall any investigation that you conducted with respect to various sources of income . . . ?
>
> JARVIS: Anything, defense or lead that I had that I could pursue in good faith, I'm sure I did.

(Doc. 221 at p. 18, ll. 17-21). As Petitioner has failed to show that different decisions by his trial counsel regarding the CDs would have altered the outcome of the case, this claim of ineffective assistance of counsel also fails.

*D. Witnesses*

Petitioner asserts that his trial counsel was ineffective because his counsel failed to investigate and subpoena witnesses to testify on Petitioner's behalf, and his counsel failed to effectively investigate in order to cross-examine Government witnesses (Doc. 209).

As previously stated, on the day of trial, Petitioner had still not informed his trial counsel of the witnesses he wished to call (Doc. 118 at p. 6-7). The reasonableness of an attorney's actions is correlated to the amount of information the defendant provides. *Strickland*, 466 U.S. at 691. Herein, Petitioner admits that he did not supply his trial counsel with any potential witnesses (Doc. 118 at p. 6-7). Petitioner's failure to supply his trial counsel with adequate information hampered his trial counsel's ability to investigate and subpoena witnesses. Petitioner's trial counsel instead used the cross-examination of the Government's witnesses to produce evidence regarding Petitioner's gambling and the CDs. Petitioner has failed to provide evidence that his counsel's use of cross-examination as a means to present such evidence altered the outcome of Petitioner's case; thus, Petitioner has not proved ineffective assistance of counsel.

Petitioner further contends that his trial counsel did not investigate or prepare adequately for the cross-examinations of Sharon Twine and Cassandra Moore, previous girlfriends of Petitioner (Doc. 209). Both witnesses were favorable to Petitioner during cross-examination and Petitioner's trial counsel highlighted the favorable testimony. Additionally, Petitioner's trial counsel effectively impeached Moore with prior inconsistent statements from her grand-jury testimony (Doc. 221 at p. 29).

> DENNARD: I believe in regard to Ms. Moore's testimony and [sic] they're complaining about the - - you not investigating Ms. Moore's testimony, isn't it correct that Ms. Moore actually testified favorable for the defendant? She stated that . . . she never saw him purchase or possess any drugs?
>
> JARVIS: I believe that's right.
>
> DENNARD: And I believe you also effectively cross examined her in regards to her - - the differences in her testimony at grand jury and at trial; isn't that correct, sir?
>
> JARVIS: Yes, sir. One of those witnesses was, I think, under indictment themselves at the time, and I brought that out as well.

(*Id.* at p. 29, ll. 4-16). Petitioner has failed to show how his trial counsel prejudiced Petitioner through the investigation and cross-examinations of both Twine and Moore, and thus, Petitioner has failed to prove ineffective assistance of counsel.

Petitioner also asserts that his trial counsel was ineffective by failing to object to the testimony of Michelle Owens. Owens was Petitioner's probation officer, and testified at trial regarding Petitioner's criminal history. The testimony was used to support Count Four of the indictment, which charged Petitioner with "possession of a firearm by a convicted felon" (*See* Doc. 118 at p. 46-7). At the evidentiary hearing, Petitioner's trial counsel stated that he did not have a basis to object to the testimony about Petitioner's criminal history (Doc. 221 at p. 22);

however, prior to trial, he demanded limiting instructions regarding the evidence (Doc. 118 at p. 46-7). As Petitioner has not shown that he was prejudiced by his counsel's decision to not object to the testimony, Petitioner's claim of ineffective assistance regarding Owens must fail.

As Petitioner has failed to show that he was prejudiced by the actions of his counsel, Petitioner has failed to prove ineffective assistance of counsel in regard to his counsel preparing an adequate defense.

*E. Miscellaneous Claims*

Petitioner brings several other claims alleging ineffective assistance of counsel in his Amended Motion to Vacate; however, Petitioner does not raise the claims in his post-hearing brief. Petitioner asserts that his trial counsel failed to fully and fairly advise Petitioner of the plea offers and the significance thereof, and failed to fully advise him of his rights to testify and did not allow him to testify (Doc. 209).

Petitioner asserts that his trial counsel did not fairly advise him of any plea offers or the significance of the plea offers. During the evidentiary hearing, Petitioner's trial counsel testified that he communicated all plea offers in writing to Petitioner; he believed that Petitioner understood the offers, and declined to accept a plea (Doc. 221 at p. 24, ll. 2-13). Petitioner's trial counsel communicated the significance of the offers, "especially in light of the potential time that [Petitioner was] facing" (*Id.*). Further, Petitioner's trial counsel stated that he remembered making at least one trip to Petitioner's holding cell to speak with Petitioner about a new offer (*Id.* at p. 30-31). Petitioner's trial counsel believed that Petitioner "understood and declined to accept the offer[s], as was his right" (*Id.* at p. 24, ll. 12-13). As Petitioner has failed to provide evidence that his counsel's performance was unreasonable under prevailing professional norms, this claim

of ineffective assistance of counsel must fail.

Petitioner also contends that his trial counsel failed to permit him to testify (Doc. 209). The trial record indicates that both Petitioner's counsel and the trial judge instructed Petitioner regarding his right to testify and asked if he was going to waive the right (Doc. 120 at p. 136-39). Petitioner decided not to take the stand after extensive discussions with his trial counsel (*Id.* at p. 139). When asked at the evidentiary hearing if he believed Petitioner understood his right to testify, Petitioner's trial counsel stated that he felt sure that Petitioner did understand (Doc. 221, p. 23, ll. 16-20). As Petitioner made an informed decision with the aid of his trial counsel and the trial judge, Petitioner's trial counsel did not deny Petitioner the right to testify.

## Conclusion

The Petitioner has failed to show that his attorney's performance was deficient, or that Petitioner was prejudiced by his attorney's performance, such that there was a reasonable probability that but for counsel's errors, Petitioner would not have been found guilty. Thus, it is the Recommendation of the undersigned that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the Recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order. If the Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to

make regarding a certificate of appealability.

**SO RECOMMENDED**, this 17th day of May, 2011.

s/ ***THOMAS Q. LANGSTAFF***

UNITED STATES MAGISTRATE JUDGE

llf